**Joyce G. CANNON, Appellant (Petitioner below),**

v.

**Gerald W. CANNON, Appellee (Respondent below).**

No. 49S05–0101–CV–38.

Supreme Court of Indiana.

Nov. 16, 2001.

---

5. Ind. Const. art. VII, § 4.

David M. Henn, Stowers, Weddle & Henn, PC, Indianapolis, IN, Attorney for Appellant.

Patrick Murphy, Anthony M. Campo & Associates, Indianapolis, IN, Attorney for Appellee.

SULLIVAN, Justice.

## ON PETITION TO TRANSFER

Joyce Cannon sought "spousal maintenance" in her divorce from Gerald Cannon, contending that she was unable to support herself due to physical and mental incapacity. We agree with the divorce court and the Court of Appeals that Joyce was not entitled to maintenance payments. However, those courts should not have considered such factors as depletion of material assets in deciding entitlement to spousal maintenance.

---

**1.** No claim is made to us concerning the appellate attorney fee issue and we summarily

*Background*

Joyce Cannon filed a petition in 1994 for dissolution of her 25–year marriage to Gerald Cannon. During the marriage, she had suffered from numerous medical ailments and as part of the dissolution she sought "spousal maintenance." The trial court entered a decree of dissolution of marriage in 1999 which denied her request for spousal maintenance. She then appealed this determination to the Court of Appeals. In response, Gerald asked the Court of Appeals to order Joyce to pay his appellate attorney fees. The Court of Appeals affirmed the determination of the trial court with respect to spousal maintenance but denied Gerald's request for fees. *Cannon v. Cannon,* 729 N.E.2d 1043 (Ind. Ct.App.2000). Joyce now requests that we examine her spousal maintenance claim.[1]

*Discussion*

I

A good place to start analyzing a claim for spousal maintenance is this court's opinion in *Voigt v. Voigt,* 670 N.E.2d 1271 (Ind.1996), in which Chief Justice Shepard comprehensively reviewed the evolution from alimony to spousal maintenance in Indiana marital dissolution law. For our purposes in this case, one specific lesson and one more general lesson from *Voigt* are relevant.

At the specific level, Chief Justice Shepard pointed out that in Indiana a court may order spousal maintenance in three circumstances:

(1) *Incapacity maintenance:* where the trial court "finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or her-

affirm the opinion of the Court of Appeals on that issue. Ind. Appellate Rule 58(A)(2).

self is materially affected." Ind.Code § 31–15–7–2(1) (1998).[2]

(2) *Caregiver maintenance:* where the trial court finds that a spouse must forgo employment in order to care for a child with a physical or mental incapacity. *Id.* § 31–15–7–2(2).[3]

(3) *Rehabilitative maintenance:* where the trial court finds that a spouse needs support while acquiring sufficient education or training to get an appropriate job. *Id.* § 31–15–7–2(3).[4]

*Voigt,* 670 N.E.2d at 1276–77.

At the more general level, *Voigt* stands for the proposition that, in the absence of an agreement between the parties, the trial court's authority in ordering maintenance is restricted and limited to these three statutory options. *Id.* at 1276. "Where none of these circumstances exist, a court may not order maintenance without the agreement of the parties. This policy reflects a clear legislative intent to retain fairly strict limits on the power of courts to order maintenance without the consent of the parties." *Id.* at 1277 (citations omitted).

Here Joyce seeks incapacity maintenance. As such, *Voigt* informs us that determining Joyce's claim to incapacity maintenance must be evaluated by giving a strict if not literal interpretation to the language of the statute. That is, the trial court could only award incapacity maintenance if it found Joyce to be physically or mentally incapacitated to the extent that her ability to support herself was materially affected. And, although the language of the statute appears to give the trial court some discretion not to award maintenance even where it makes such finding, we believe the strict construction principles applicable in this area narrowly limit that discretion as well.[5]

## II

■ The trial court entered findings of fact from which it concluded that Joyce was not entitled to incapacity maintenance in this case. Because the statute requires findings in order to award maintenance, Ind.Code § 31–15–7–1, we treat the court's findings as "special findings" under Indiana Trial Rule 52(A)(3). We will not set aside such findings unless clearly erroneous and give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.*

As pointed out by the Court of Appeals, the trial court issued findings on the spousal maintenance issue in response to Joyce's motion to correct errors. In those findings, the trial court reconsidered and then affirmed its earlier determination that Joyce's request for spousal maintenance be denied. We summarize those revised findings as follows.

■ First, the trial court found the testimony of Gerald's and Joyce's medical

---

2. This provision has been recodified without substantive change subsequent to *Voigt.* At the time of *Voigt,* it was codified as Ind.Code § 31–1–11.5–11(e)(1) (Supp.1996).

3. Previously codified as Ind.Code § 31–1–11.5–11(e)(2) (Supp.1996).

4. Previously codified at Ind.Code § 31–1–11.5–11(e)(3) (Supp.1996). In its opinion in this case, the Court of Appeals incorrectly recited that the criteria for awarding rehabilitative maintenance under Ind.Code § 31–15–

7–2(3) were the factors to be considered when awarding incapacity maintenance under Ind. Code § 31–15–7–2(1). *Cannon v. Cannon,* 729 N.E.2d 1043, 1046 (Ind.App.2000). However, the Court of Appeals does not appear to have actually employed the rehabilitative maintenance criteria in analyzing Joyce's claim here. *See id.* at 1047–48.

5. We shall revisit this latter concept in part III *infra.*

experts in conflict as to the degree to which she suffered from "dermal vasculitis." It also found that Gerald's medical expert observed that Joyce would not be able to perform full-time work and incurred expenses for therapy and prescriptions because she was suffering from depression.

Second, the trial court found there to be some evidence that Joyce had been able to earn some income by conducting "garage sales," although it was difficult, if not impossible, to document her earnings.

From these two findings, the trial court found that "the evidence as to whether Joyce was disabled to the point that her ability to support herself is materially affected is inconclusive." (R. at 22–23.) On appeal, Joyce argues that the trial court's findings as to her depression were uncontroverted and that the evidence relating to garage sales all predated the medical evidence as to incapacity. While we acknowledge these arguments, we conclude that they go to the relative weight and credibility of the evidence and witnesses at trial, matters within the purview of the trial court. Because the trial court's findings in this regard are not clearly erroneous, we sustain its conclusion that Joyce is not entitled to incapacity maintenance.

### III

■ After it addressed the medical and garage sale evidence, the trial court made three additional findings. It held that during the pendency of the divorce action, Gerald had paid, pursuant to court order, specified amounts in "spousal maintenance," mortgage payments, and Joyce's insurance premiums. It further held that since separation Joyce had liquidated and utilized specified marital assets. Lastly, it held that during the pendency of the divorce, Joyce had spent money on home remodeling, cosmetic surgery, and a vacation. From these three additional findings, the court concluded that its order denying Joyce's request for spousal maintenance "is not erroneous under the circumstances." (R. at 24.)

The Court of Appeals referred to these three additional findings in its opinion. Because "a maintenance award is not mandatory," the Court of Appeals said, "[u]nder these circumstances, we cannot say that the trial court abused its discretion in denying [Joyce's] request for spousal maintenance." *Cannon,* 729 N.E.2d at 1048.

■ We agree with the Court of Appeals that, given the language of the statute, a maintenance award is not mandatory. But as we pointed out at the outset of this discussion, the Legislature has narrowly circumscribed the authority of courts to award spousal maintenance. While such factors as payments made by one spouse to another pursuant to the terms of provisional orders and depletion of marital assets are appropriate considerations in dividing the marital pot, *see* Ind. Code § 31–15–7–5 (1998), we believe that the statutory scheme for spousal maintenance does not admit of such considerations. Where a trial court finds that a spouse is physically or mentally incapacitated to the extent that the ability of that spouse to support himself or herself is materially affected, the trial court should normally award incapacity maintenance in the absence of extenuating circumstances that directly relate to the criteria for awarding incapacity maintenance.

Because the trial court here found, irrespective of the provisional payment and depletion of asset issues, that Joyce had not demonstrated an entitlement to incapacity maintenance, no reversal or remand is required.

*Conclusion*

We grant transfer pursuant to Indiana Appellate Rule 58(A), summarily affirm the opinion of the Court of Appeals as to the issue discussed in footnote one, and affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.