**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TODD WOODMANSEE**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**STACY L. KELLEY**
Glaser & Ebbs
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JENNIFER ALAO-HAMED, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1110-DR-1017 |
| | ) | |
| ADENIRAN ALAO-HAMED, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick L. McCarty, Judge
Cause No. 49D03-0911-DR-53149

**June 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

The trial court entered a Decree of Dissolution (the Decree) on June 22, 2011 dissolving the marriage between Jennifer Alao-Hamed (Jennifer) and Adeniran Alao-Hamed (Adeniran). Pursuant to the Decree, Jennifer was awarded 60% of the marital estate and "spousal maintenance in a reasonable amount to be determined by the Court for a period of twenty-four (24) months." *Appellant's Appendix* at 18. Thereafter, Adeniran filed a motion to correct error, which the trial court granted in part on September 20, 2011. In that order, the trial court granted Adeniran's motion with respect to the issue of spousal maintenance and the division of certain marital assets. Jennifer appeals the granting of the motion to correct error, presenting the following restated issues for review:

1. Did the trial court err in granting the motion to correct error with respect to the division of marital assets and the provision of spousal maintenance?

2. Did the trial court fail to address Jennifer's verified petition for spousal maintenance?

We affirm.

The facts are that in November 2009, Adeniran filed a petition for dissolution. A final hearing in the matter was conducted on May 10, 2011. Adeniran testified that there was no equity in the marital residence. Jennifer did not controvert this testimony. He asked the trial court to order the presumptive 50/50 split of the marital assets. On June 22, 2011, the trial court entered the Decree, which provided, in relevant part, as follows: (1) Adeniran was ordered to refinance the marital home so that Jennifer's name was no longer on the title or loan documents; (2) in the event Adeniran was unable to refinance as directed and defaulted on the payment, he was ordered to sell the home and split the proceeds evenly with Jennifer;

2

(3) Adeniran was ordered to pay Jennifer an amount equal to one-half of the equity in the home as of the date of the filing of the petition for dissolution; (4) Adeniran was ordered to pay all of the marital debt, including approximately $18,400 in credit card debt and $30,000 in student loan debt; (5) Jennifer was awarded all of Adeniran's PERF retirement account, valued at $2200; (6) Adeniran was ordered to pay spousal maintenance to Jennifer for 24 months; (7) Jennifer was awarded the couple's Toyota 4-Runner vehicle, although Adeniran was ordered to "assume sole responsibility for any maintenance, insurance, and further liability arising from that vehicle."[1] *Appellant's Appendix* at 19. Finally, the court awarded the parties the personal assets then in their possession.

On July 20, 2011, Adeniran filed a motion to correct error. Relevant to the issues presented in this appeal, Adeniran alleged that the court's dissolution decree was erroneous in the following respects: (1) Ordering Adeniran to pay spousal maintenance when Jennifer had not requested it, and in any event the criteria for an award of spousal maintenance were not present; (2) ordering Adeniran to remove Jennifer's name from the mortgage and title, because the evidence demonstrated that the mortgage and title were in Adeniran's name only; (3) awarding half of the equity in the marital home to Jennifer, because the undisputed evidence showed that there was no equity in the home; (4) awarding all of the marital assets to Jennifer, consisting primarily of the Toyota vehicle and the PERF; (5) ordering Adeniran to assume all of the marital debt; and (6) failing to mention a 1993 Honda vehicle that Jennifer purchased during the marriage.

---

[1] An exhibit in the record reflects that the Toyota was valued at $7825, but $6779 was still owed on the

3

On August 4, 2011, in response to Adeniran's motion to correct error, Jennifer filed a response in opposition to the motion to correct error, as well as "Respondent's Verified Petition for Spousal Maintenance and/or Respondent's Request for Leave of Court to Re-open Evidence." *Id*. at 31. On September 20, 2011, the trial court issued an amended decree of dissolution, modifying the original decree in the following relevant respects: (1) The Toyota vehicle was awarded to Adeniran; (2) the Honda was awarded to Jennifer; (3) Adeniran was not ordered to pay spousal maintenance; (4) Adeniran was not ordered to remove Jennifer from the marital home's mortgage or title; (5) no portion of the marital home's equity was awarded to Jennifer; the PERF was split evenly between the parties; and (6) the parties were ordered to pay debts on the credit cards they held in their own name, which for Adeniran constituted six credit cards totaling approximately $6070 in outstanding debt, and for Jennifer two credit cards totaling $12,335 in outstanding debt. Jennifer contends the trial court erred in granting Adeniran's motion to correct error.

1.

Jennifer presents the following issue: "Whether the trial court erred in granting the Petitioner's Motion to Correct Error, effectively reversing the entire original Dissolution of Marriage without a proper analysis of the division of assets and debts and reversing the original finding granting Appellant spousal maintenance." *Appellant's Brief* at 1. It would appear by this that Jennifer separates the order granting Adeniran's motion to correct error into two broad categories of error. One concerns the distribution of assets and liabilities, and

vehicle.

4

the other concerns the award of spousal maintenance. We will begin with the allegation that the trial court erred in distributing the marital assets.

Jennifer frames the issue regarding distribution of assets as reproduced above. She also addressed the issue in the "Summary of the Argument" section of her brief as follows:

> Further, the trial court originally ordered that both parties retain all property in their possession, but then ordered a return of all property requested by [Adeniran] without a legal finding of an equitable split of assets by granting the Motion to Correct Errors. The court similarly erred in its analysis of and division of debt.

*Id*. at 4. She mentions the issue in passing one last time in the "Conclusion" of her argument, *viz.*, "the Appellant respectfully prays that … the Court's original Dissolution of Marriage be reinstated or, in the alternative, that this cause be remanded for further proceedings to address issues of spousal maintenance and division of assets and debts[.]" The "Argument" section of her brief, however, is devoted exclusively to her claim of error relative to the failure to award spousal maintenance in the amended dissolution order.

Ind. Appellate Rule 46 (A)(8)(a) provides that the argument section of an appellate brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22." Jennifer has presented *no* argument with respect to the division of marital assets. Instead, she has merely complained than an error was made in that respect. Jennifer has waived this issue because she failed to provide cogent argument supported by citations to authority. *See* App. R. 46(A)(8)(a); *Smith v. Smith*, 854 N.E.2d 1 (Ind. Ct. App. 2006).

5

2.

What remains is Jennifer's claim that the trial court erred in failing to order Adeniran to pay spousal maintenance. This was a result of the granting of Adeniran's motion to correct error, which overturned a provision of the Decree granting spousal maintenance. Therefore, Jennifer's allegation of error can be viewed as arising in two ways: (1) the failure to award spousal maintenance, or (2) the granting of Adeniran's motion to correct error. As it happens, the standard of review is the same for both.

A trial court's ruling on a motion to correct error under T.R. 59 is reviewed for an abuse of discretion. *Newland Res., LLC v. Branham Corp.,* 918 N.E.2d 763 (Ind. Ct. App. 2009). An abuse of discretion will be found only when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Id.* The decision whether to award spousal maintenance is also committed to the trial court's discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. *Augspurger v. Hudson*, 802 N.E.2d 503 (Ind. Ct. App. 2004). "The presumption that the trial court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal." *Id.* at 508 (quoting *Fuehrer v. Fuehrer*, 651 N.E.2d 1171, 1174 (Ind. Ct. App. 1995), *trans. denied*).

There are two ways in which a divorcing spouse may be obligated to make spousal maintenance payments: (1) under certain, limited circumstances, by court order, and (2) under all other circumstances, by agreement of the parties. *See* Ind. Code Ann. § 31-15-7-2

6

(West, Westlaw through legislation effective May 31, 2012). In the first category, a trial court may award only three limited varieties of post-dissolution maintenance: spousal incapacity maintenance, caregiver maintenance, and rehabilitative maintenance. *Id.* Where none of the statutory circumstances exist for awarding incapacity maintenance, caregiver maintenance, or rehabilitative maintenance, a court may not order maintenance absent an agreement of the parties to a divorce. *Frazier v. Frazier*, 737 N.E.2d 1220 (Ind. Ct. App. 2000).

Clearly, the parties did not agree that Adeniran would pay spousal maintenance. Therefore, an award of spousal maintenance through avenue (2) above is foreclosed. Furthermore, we find no evidence in the record that Jennifer is physically or mentally incapacitated to the extent that her ability to support herself is materially affected, therefore spousal maintenance is not available under I.C. § 31-15-7-2(1) (incapacity). Neither is Jennifer "the custodian of a child whose physical or mental incapacity requires [her] to forgo employment[.]" I.C. § 31-15-7-2(2)(B). This leaves rehabilitative maintenance under subsection (3) as the sole source for an award of spousal support.

When presented with a request for spousal rehabilitative maintenance, a trial court considers the factors set forth in I.C. § 31-15-7-2(3), which provides:

(3) After considering:

> (A)    the educational level of each spouse at the time of marriage and at the time the action is commenced;
>
> (B)    whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or

7

both;

(C)     the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

(D)     the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

We note that the statute is written in the conjunctive, meaning that the each factor must be considered when making this determination. *Moore v. Moore*, 695 N.E.2d 1004 (Ind. Ct. App. 1998). We note also, however, that the statute does not require the court to make findings relative to all these factors. Instead, the statute requires only that the court consider them. *Id.*

The parties in the present case did not request special findings on this issue and the trial court did not enter them. This is not surprising in view of the fact that Jennifer did not formally request an award of spousal maintenance. Indeed, the parties spend considerable time upon appeal arguing the merits of the trial court's finding in granting Adeniran's motion to correct error that Jennifer did not request spousal maintenance.[2] We need not decide whether the court erred in this regard because the court nevertheless went on to determine that "the evidence did not support the award for spousal maintenance pursuant to I.C. 31-15-

8

7-2." *Appellant's Appendix* at 9. The trial court's failure to support its judgment with findings does not require reversal. *Moore v. Moore*, 695 N.E.2d 1004. When, as here, a trial court has not entered findings, we treat the judgment as a general one. *Id.* When a trial court enters a general judgment, it should be affirmed upon any theory supported by the evidence. *Lang v. Starke Cnty. Office of Family & Children,* 861 N.E.2d 366 (Ind. Ct. App. 2007), *trans. denied.* We will reverse a judgment as clearly erroneous only if, after reviewing the record, we have a "firm conviction that a mistake has been made." *Id.* at 371.

The testimony at the hearing established that Jennifer has a B.A. in rehabilitative services. Prior to the marriage she worked for the Terre Haute Chamber of Commerce "in sales and marketing, primarily." *Transcript* at 31. She lost that job shortly before her marriage to Adeniran when her position was eliminated. She explained that she did not seek work during the marriage because "the agreement between my spouse and me was that I would be home with the baby to raise her and my husband would be out in the work force." *Id*. at 20. At the time of the final hearing, she was looking for work, but without success.

---

[2] The relevant portion of the order granting in part the motion to correct error provided: "The Respondent's request for spousal maintenance and motion to re-open evidence is denied, as there was no request made by the Respondent for spousal maintenance[.]" *Appellant's Appendix at 9*

The evidence thus established that Jennifer has both a college degree and skills and experience in sales and marketing. We can find no evidence indicating that she is in need of additional education to equip her to find appropriate employment. Although she voluntarily stopped working outside the home when she married Adeniran in 2006,[3] they separated approximately three or four years later and therefore she has not been out of the workforce for a prohibitive amount of time. Moreover, she testified that she is currently looking for employment and indicated that her biggest impediment in securing employment is the current state of the economy and other factors unrelated to her qualifications to obtain employment.[4] The evidence does not support Jennifer's claim that she is entitled to rehabilitative maintenance. Thus, we cannot conclude that the trial court abused its discretion in declining to award rehabilitative maintenance to Jennifer.

Judgment affirmed.

MAY, J., and BARNES, J., concur.

---

[3] The evidence on this issue is conflicting. The amended dissolution decree stated that Jennifer and Adeniran married on July 2, 2005. Jennifer testified at the hearing, however, that they were married on July 5, 2006. On the question of her employment, Jennifer testified that she stopped working shortly before they were married. Elsewhere, however, she testified that she "has been a homemaker since 2007[.]" *Transcript* at 20.

[4] When asked why she is not currently employed, she replied: "I have been a homemaker since 2007 and it's not the easiest thing to find work right now, and I've also been a caregiver for my father who recently passed away from colon cancer and I'm taking care of my mother, so …." *Transcript* at 20.